UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division

Case Number:09-14093-CIV-MARTINEZ-LYNCH

PATRICIA LYNN HUNT, individually and any
and ALL AVIATION STUDENTS on behalf of
all other similar situated,

      Plaintiff,

vs.

KEYBANK USA, N.A., et al,

      Defendants.
_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

THE MATTER was referred to the Honorable Frank J. Lynch, Jr., United States Magistrate Judge for a Report and Recommendation on Defendants' Motions to Dismiss **(D.E. Nos. 20-23)**. The Magistrate Judge filed a Report and Recommendation **(D.E. No. 28)**. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, AFFIRMS and ADOPTS the Report and Recommendation and DISMISSES this case.

    I.    BACKGROUND

The undersigned begins by briefly describing the procedural history of this case. On March 24, 2009, Plaintiff -- who is proceeding *pro se* -- filed her initial complaint (D.E. No. 1). On August 10, 2009, the Magistrate Judge filed a Report and Recommendation, in which he recommended dismissing this case for lack of jurisdiction. The Magistrate Judge specifically

noted that there is "no need to give the Plaintiff leave to amend her Complaint[ because] it is not apparent that [she could] state a better jurisdictional basis[ and because] dismissal of the Complaint will result in practical benefit to Plaintiff" by giving her the opportunity to "further develop her case, and . . . allow her to re-evaluate which courts, e.g., Florida or Ohio state courts, would provide a more appropriate forum in which to bring suit" (D.E. No. 8).

Plaintiff then responded by filing a flurry of court papers, including multiple requests for extensions of time to file objections to the Report and Recommendations. It is unclear whether Plaintiff actually filed any objections, although on September 24, 2009 -- after the deadline for filing timely objections had expired -- she filed a so-called "Second Amended Complaint for Injunctive Relief" (D.E. No. 42)[1] without Defendants' consent and without obtaining leave of Court to do so. *See* Fed. R. Civ. P. 15(a). Finally, Plaintiff filed at least three separate documents to explain that she is caring for an ill family member and requests "a continuance/extension of time" until March 31, 2010 (D.E. Nos. 51-53).

As it now stands, Defendants have requested a status conference to divine the meaning and import of the various documents filed by Plaintiff, to correct Plaintiff's failures to comply with this Court's procedural rules and Orders, as well as to determine whether any of the documents constitute objections to the Report and Recommendation and to attempt to reduce the clutter and confusion that presently exists on the docket. Defendants add that they suspect that Plaintiff has committed a fraud on the Court in connection with this case that they intend to address in more detail at a later time, if necessary (D.E. No. 45).

---

[1] This appears to be, in fact, Plaintiff's *First* Amended Complaint.

II.   DISCUSSION

The undersigned, of course, construes Plaintiff's filings liberally, as she is not represented by counsel. See Ostroff v. State of Fla., Dept. of Health & Rehabilitative Svs., 554 F. Supp. 347, 351 (M.D. Fla. 1983). Moreover, the undersigned recognizes that "a complaint need not cite the precise grounds upon which the court's jurisdiction is based, so long as the grounds are evident from the facts set forth in the complaint." Id. Finally, the undersigned will consider the allegations contained in the amended complaint -- in addition to those contained in the initial complaint -- in an effort to discover a basis for jurisdiction, even though the amended complaint was not filed in a procedurally proper manner. See Jarzynka v. St. Thomas Univ. School of Law, 310 F. Supp. 2d 1256, 1264 (S.D. Fla. 2004) (citing Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir. 1999)) ("[A]lthough pro se litigants are entitled to have their pleadings liberally construed, such liberal construction does not extend to a pro se litigant's failure to comply with either federal procedural rules or local court rules.").

Even viewing Plaintiff's complaint and amended complaint in the most forgiving light possible, the Court simply cannot find a basis to support the exercise of subject matter jurisdiction over this lawsuit. In blatant disregard of the requirement that "[e]ach allegation . . . be simple, concise, and direct," Fed. R. Civ. P. 8(d), both the complaint and the amended complaint are so convoluted, confusing and contorted as to be almost completely incomprehensible. Nevertheless, the undersigned understands Plaintiff to allege the following:

In June 2003, Plaintiff was admitted to a flight school owned and/or operated by Defendants Ari Bean Aviator, Inc. (the "Flight School"), Michael E. Cohen and Michael Cohen Investments, Inc.

The Flight School promoted and advertised a loan offered by Defendant Key Education Resources ("Key Bank").[2] Plaintiff applied for and received a Key Bank loan to pay for her Flight School tuition. Although she requested that Key Bank pay the Flight School tuition in $5,000 increments, it refused to do so and instead paid the Flight School a single, $35,000 lump-sum payment. The Flight School told Plaintiff that it did not receive Plaintiff's full tuition from Key Bank, even though it had. Key Bank was also deceptive when asked about the loan.

Plaintiff was then informed that a credit problem prevented Key Bank from completing the loan and forwarding the funds to the Flight School. As it turned out, Plaintiff's credit was adversely affected because Defendant Hudson Valley Community College ("Hudson Valley") incorrectly reported her as being in default on a previous student loan. After approximately one year, Plaintiff managed to correct her credit history and resume her training at the Flight School.

Plaintiff was nevertheless dissatisfied with the Flight School for various reasons, including the fact that planes were often unavailable due to maintenance problems, that instructors were often drunk and ill-tempered, and that the instructors and staff retaliated against students who complained. Plaintiff appears to argue in the amended complaint that the Flight School was contractually obligated to "return . . . loan money back to Key Bank" when she expressed dissatisfaction with the program, but they refused to do so (D.E. No. 42 at 3).

Plaintiff continued her training until she suffered an injury that resulted in her assignment

---

[2] Plaintiff names Great Lakes Educational Loan Services, Inc. ("Great Lakes") as a defendant, although its role in this case is not clear. The only mention of Great Lakes appears in the initial complaint, in which Plaintiff suggests that it is somehow associated with Key Bank (D.E. No. 1 at 6) ("I find out from Great Lakes representative and Key Bank that in 2005 the flight school received all the funds for me during this time in 2003 I could have been in the islands working as a Commercial Pilot living on a private estate and working for a family I use to work for while in flight school at John's Island.").

to ground school. Ultimately, in 2006, the Flight School expelled her due to her injuries. Plaintiff appears to argue that the Flight School was contractually obligated to reach a fair settlement with students, like Plaintiff, who could not finish the program due to an accident, but that they breached the contract by retaining "the loan money utilizing the funds for approximately six months after my 2005 accident while Key Bank . . . let the loan accrue high interest rate on the Aviation Loan" (D.E. No. 42 at 3).[3]

In addition, Plaintiff appears to allege that at least one of the Defendants violated 16 C.F.R. § 433.2, which is known as the "Holder Rule," and requires all consumer installment contracts to contain a provision stating that "any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." Plaintiff, however, does not explain how she was directly harmed by the absence of this provision in any document, and it does not appear that a violation of the Holder Rule, standing alone, gives rise to a private cause of action in any event. *See Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 544 (E.D.N.Y. 2006).

Plaintiff requests two forms of relief. First, she states, "The sole remedy Plaintiff seek on behalf of themselves and the proposed classes is an injunction prohibiting defendants from contacting credit agencies regarding the Notes and prohibiting them from taking any action to enforce the Notes" (D.E. No. 42 at 5). Second, she "would request this case be moved to State of Florida Court due to the Florida Laws and copies of the March 2006 which was never signed by

---

[3] Confusingly, Plaintiff states that she received a refund check in March 2006 for $9,242.99, which she never cashed for unexplained reasons (D.E. No. 42 at 4).

the Plaintiff which I believe to be forgery" (D.E. No. 42 at 12).

None of Plaintiff's allegations give rise to federal subject matter jurisdiction. Although Plaintiff conclusorily asserts a cause of action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, there is a dearth of facts contained in the complaint or the amended complaint to support this cause of action. For one thing, the RICO Act claim appears to be based on a predicate acts of mail and wire fraud, which are obviously not pled with the requisite particularity. Fed. R. Civ. P. 9. Except for mentioning, in an off-hand manner, that Key Bank used "U.S. mails and wires," (*see* D.E. No. 42 at 9) there is not a clue in any of the documents Plaintiff filed in connection with this lawsuit that describe a discrete fraudulent act, not to mention a "pattern" of "related" and "continuous" acts, which must be alleged in order to state a cause of action under the RICO statute. Simply intoning the word "RICO" does not establish a federal statutory claim sufficient to confer jurisdiction upon this Court.

Plaintiff also appears to assert state law claims for breach of contract, fraud (D.E. No. 1), and aiding and abetting fraud, as well as claims based on Florida and California statutory law (D.E. No. 42 at 1, 10, 12). Assuming that there is complete diversity among the parties -- which is utterly indeterminable based on the allegations in the complaint and amended complaint -- Plaintiff fails to allege an amount in controversy in excess of $75,000. If Plaintiff is to be taken at her word, she requests only injunctive relief and there is no indication that the value of an injunction would exceed $75,000 from Plaintiff's perspective. *See Lutz v. Protective Life Ins. Co.*, 328 F. Supp. 2d 1350, 1359 (S.D. Fla. 2004) ("When calculating the amount in controversy, the value of injunctive or declaratory relief . . . . is measured from the plaintiff's perspective; the cost to the defendant is irrelevant."). Indeed, the value of the injunction to Plaintiff would seem

to be zero, since the only harm to Plaintiff, if any, occurred in the past and it does not appear that the events that gave rise to her complaint are likely to affect her again in the future.

In addition, even if the Court were to look past Plaintiff's statement that she seeks only injunctive relief, there is no allegation that she has suffered more than $75,000 in damages. Plaintiff was on notice that her initial complaint failed to allege the necessary amount in controversy and her improperly-filed amended complaint, if anything, only serves to lessen the likelihood that her claims meet the $75,000 threshold. *See Bradley v. Kelly Services, Inc.*, 224 Fed. Appx. 893, 894-95 (11th Cir. 2007); *State Farm Mut. Ins. Co. v. Greater Chiropractic Ctr. Corp.*, 393 F. Supp. 2d 1317, 1323 (M.D. Fla. 2005) ("Any claimed value that cannot be reduced to a monetary standard without unsupported speculation cannot be used to satisfy the jurisdictional minimum.").

To the extent that a valid cause of action or a basis for jurisdiction is concealed within the tortured and haphazard factual narratives that Plaintiff has filed with the Court, the undersigned "ha[s] no obligation to act as counsel or paralegal to *pro se* litigants," and is not inclined to do so here. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). Nevertheless, in an abundance of caution, the undersigned has searched the record for facts giving rise to federal subject matter jurisdiction and has found none. Based upon a careful review of the record as a whole and for the reasons stated above, it is hereby

**ADJUDGED** that United States Magistrate Judge Lynch's Report and Recommendation **(D.E. No. 28)** is **AFFIRMED** and **ADOPTED**. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' Motions to Dismiss **(D.E. Nos. 20-23)** are **GRANTED, IN PART**. This case is **DISMISSED** for lack of subject matter jurisdiction. This case is **CLOSED** and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5 day of March, 2010.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record